UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

In re SHERYL STARK,

               Debtor.         **MEMORANDUM & ORDER**
                                       20-CV-4766(EK)

SHERYL STARK,

               Appellant,

        -against-

ROBERT L. PRYOR,

               Appellee.

------------------------------------x
ERIC KOMITEE, United States District Judge:

      This appeal presents a question that has divided bankruptcy courts: whether the proceeds from a "give-up" transaction involving a debtor's residence are subject to the applicable state-law homestead exemption, even though the debtor had no equity in her home at the time she filed the bankruptcy petition.  The bankruptcy court below held that such proceeds were not subject to the homestead exemption in this case.  For the reasons set out below, I respectfully disagree.  The judgment below is therefore reversed.

## I.  Background

### A.  Selected Facts

      The detailed facts of this case are set out in the Bankruptcy Court's opinion; familiarity with that document is

assumed.  As relevant here: In 2004, Appellant Sheryl Stark ("Stark") and her husband executed a note for $1,320,000, secured by a mortgage on the house.  (It is unclear from the record whether the note was connected with a purchase-money mortgage, a refinancing, or another kind of loan.)  The Starks use the Property as their primary residence.

In 2012, the mortgage holder commenced a foreclosure action in New York state court.  A judgment of foreclosure and sale entered on December 5, 2019, and the foreclosure sale was scheduled for February 18, 2020.  Five days before that sale was to take place, however, Stark initiated the Chapter 7 bankruptcy proceeding.  Record on Appeal ("R.") 13–51, ECF No. 6.  It is undisputed that at that time, she had no equity in the Property.

## B.    Give-Up Agreements: Background

Ordinarily, when a debtor owes more money on a mortgage than the mortgaged property is worth, the bankruptcy estate would realize no benefit from a sale.  Trustees are not empowered, generally speaking, to sell estate property when doing so does not benefit the unsecured creditors.  *See Jubber v. Bird (In re Bird)*, 577 B.R. 365, 377 (B.A.P. 10th Cir. 2017) ("[I]t is universally recognized[] that the sale of a fully encumbered asset is generally prohibited.") (quoting *In re KVN, Inc.*, 514 B.R. 1, 5 (B.A.P. 9th Cir. 2016)); *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 533 (Bankr. E.D.N.Y. 2016)

("[A] trustee generally may not administer an asset that is fully encumbered, as doing so cannot provide a benefit to unsecured creditors, but must instead abandon that asset."). Thus, when the proceeds of a sale would go entirely to the mortgage holder, the bankruptcy court will not authorize it. *See In re KVN*, 514 B.R. at 6.  Instead, the trustee may abandon (or be instructed by the court to abandon) the property, *In re Bird*, 577 B.R. at 376, and the bank must proceed to a state foreclosure proceeding, which will often be considerably more costly (and in some cases more time-consuming) than a sale in bankruptcy.  *See, e.g.*, *In re Feinstein Family P'ship*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000).

The "give-up" device — sometimes called a "carve-out transaction" — is a proposed workaround.  Broadly speaking, the Trustee agrees to sell the house inside the bankruptcy process in return for the mortgage-holder's agreement to "give up" some of the proceeds of that sale to the estate.  *In re KVN*, 514 B.R. at 4–5, 7.  Proponents of this device argue that the contractual benefit to the unsecured creditors empowers the bankruptcy judge to authorize the sale.  *See, e.g.*, *In re Bunn-Rodemann*, 491 B.R. 132, 136 (Bankr. E.D. Cal. 2013).  The give-up benefits the unsecured creditors because they get some proceeds from the sale of the house, whereas they would have gotten nothing absent the arrangement.  *In re Diener*, No. 11-83085, 2015 WL 4086154, at *3

(Bankr. N.D Ga. 2015).  The secured creditor benefits in at
least two ways: it realizes the time-value of getting the
proceeds earlier than it might in a foreclosure sale, and it
saves money in legal fees that the foreclosure proceeding would
require.  *In re Christensen*, 561 B.R. 195, 205 (Bankr. D. Utah
2016), *aff'd sub nom. In re Bird*, 577 B.R. 365.  Those benefits,
presumably, outweigh the value of the funds given up to the
estate.  The trustee, too, benefits: he gets a commission where
there otherwise may have been none.  *See In re Feinstein Family
P'ship*, 247 B.R. at 506-07.  The only party who does not benefit
is the debtor: when the sale is authorized, she is displaced
from the residence, possibly earlier than she would have been in
a more drawn-out foreclosure proceeding.  She also may lose the
opportunity to "negotiate an 'incentive payment' from the sales
proceeds for [her] efforts . . . in working with a real estate
broker and taking the time to market the property for a short-
sale."  *In re Bunn-Rodeman*, 491 B.R. at 135.

## C.  Procedural Background

In Stark's bankruptcy petition, she ascribed a value
of $2,222,400 to the Property; she also indicated that it was
encumbered by a mortgage of $2,565,838.38.  R. at 25, 27.  Stark
indicated that she intended to surrender the Property.  R. at
11.  However, she also claimed a homestead exemption of $170,825

pursuant to New York Civil Procedure Law § 5206.  R. at 25; *see* 11 U.S.C. § 521(a)(2)(A).

Appellee Robert L. Pryor was appointed the Chapter 7 Trustee in Stark's case.  Bankruptcy Court Docket 2, ECF No. 6-4.  Very shortly thereafter — a little over two months — the Trustee filed a Report of No Distribution stating that the estate "ha[d] been fully administered" and that he "neither received any property nor paid any money on account of [the] estate."  *Id.* at 4.  The report also indicated that the Trustee had abandoned the Property.  *Id.; see* 11 U.S.C. § 554(a).

Two weeks later, however, the Trustee rescinded his Report, stating that he had "determined that there could be a benefit to the Estate to administer an asset."  R. at 200.[1]  In June 2020, the Trustee moved to compel Stark to permit the Trustee access to inspect and value the Property.  Bankruptcy Court Docket 4.  Stark opposed this motion, *see id.* at 6, and it remains pending before the Bankruptcy Court.

On July 27, 2020, the Trustee filed a motion to sell the Property, which Stark also opposed.  R. pt. 2, at 83-84, ECF No. 6-1.  In that motion, which is the subject of this appeal,

_____

[1] Stark received a Chapter 7 discharge on May 19, 2020.  R. at 210.  But the case remains open, given that the Property has not yet been administered. *See* 11 U.S.C. § 350(a); Fed. R. Bankr. P. 5009; *see also Martinson v. Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir. 1998) ("A case is not closed simply because a discharge of the debtor has been granted.").

the Trustee indicated that the mortgage lender was willing to provide a "carve-out" to the estate in exchange for the Trustee selling the property through the bankruptcy process. *Id.* at 85.

However, the Trustee was unable to provide the Bankruptcy Court with "the precise nature of the carve-out" because he had been unable to inspect and obtain a valuation of the property (which was the goal of the still-pending Motion to Compel). *Id.* at 86. He represented only that such a carve-out would be "meaningful." *Id.* at 85.

Stark opposed the Motion for Sale on two grounds. First, she argued that carve-out deals are inherently proscribed under the Bankruptcy Code. *Id.* at 100–12. Second, she argued that even if carve-out deals were permissible as a general matter, she remained entitled to her homestead exemption under New York law. *Id.* at 112–17. Therefore, Stark contended, no carve-out deal was permissible unless the carve-out was large enough to cover both her exemption and a sizable payment to the unsecured creditors. *Id.* at 117–19.

After a hearing, the Bankruptcy Court issued a decision holding that (1) carve-out deals are permissible in at least some circumstances, *In re Stark*, No. 8-20-70948, 2020 WL 5778400 (Bankr. E.D.N.Y. Sept. 25, 2020), at *6; and (2) the homestead exemption did not apply here because "the carved-out funds flow from the trustee's negotiation rights and not the

debtor's equity in the property." *Id.* at *6.  Accordingly, the Court concluded that "under these facts," the carve-out would not be subject to the homestead exemption and, instead, would constitute non-exempt property of the estate. *Id.* at *2.  Under the Bankruptcy Code, that meant that the carve-out would be made available for distribution according to the Chapter 7 "waterfall," under which "a debtor receives a distribution only when all creditors have been paid in full." *Id.* at *8 (citing 11 U.S.C. § 726).  However, the Court did not have occasion to review an actual carve-out agreement, since no details had been provided.  Instead, the Court "adjourned for further proceedings" all other matters other than the holding that we consider here. *Id.* at *1, *3, *8.

Stark timely appealed.  R. pt. 3, at 41, ECF No. 6-2.

## II. Jurisdiction

The Bankruptcy Court entered its decision pursuant to 11 U.S.C. § 157, which grants bankruptcy judges jurisdiction over bankruptcy proceedings, including "matters concerning the administration of the estate."  11 U.S.C. § 157(b)(2)(A).  The parties agree that that I have jurisdiction over this appeal. *See* Tr. of Oral Arg. 4:3–9, 42:5–8, ECF No. 14.  Still, "federal courts have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*." *In re Tronox Inc.*, 855 F.3d 84, 95 (2d Cir. 2017).

I conclude I do have jurisdiction under 28 U.S.C. § 158(a)(1).  That provision grants district courts jurisdiction over appeals "from final judgments, orders, and decrees" of a bankruptcy judge.  28 U.S.C. § 158(a)(1).  Here, the Bankruptcy Court denied the homestead exemption that Stark claims.  *See In re Stark*, 2020 WL 5778400, at *3 ("[T]he proceeds given up to the Trustee pursuant to the [carve-out] agreement are not subject to the Debtor's homestead exemption.").  That is a final, and thus appealable, order.

In *John T. Mather Memorial Hospital of Port Jefferson, Inc. v. Peal*, the Second Circuit held that "a decision granting or denying an exemption is final" for purposes of appellate jurisdiction in bankruptcy matters.  723 F.2d 193, 194 n.1 (2d Cir. 1983) (per curiam).  Indeed, "[n]early every circuit to consider the question has held that an order granting or denying an exemption is final for purposes of [11 U.S.C.] § 158(d) or its predecessor statute."  *Huebner v. Farmers State Bank (In re Huebner)*, 986 F.2d 1222, 1223 & n.3 (8th Cir. 1993) (citing cases).  For instance, in *Mather Memorial Hospital*, the Bankruptcy Court allowed the debtors, a married couple, to claim exemptions of $10,000 per person rather than $10,000 total.  723 F.2d at 193-94.  A creditor objected, and the parties appealed by "stipulation" under the predecessor statute to Section 158.  *Id.* at 194 & n.1.  The Second Circuit found that the appeal was

"final," despite not having noted whether any sale order had been issued.  *Id.* at 194 n.1.

Such decisions are final because, as the Seventh Circuit explained in *Matter of Barker*, they "involve disputes over what belongs in the bankrupt estate" and therefore "can and frequently do determine the entire course of the bankruptcy proceeding."  768 F.2d 191, 194 (7th Cir. 1985); *accord In re Huebner*, 986 F.2d at 1223; *White v. White (In re White)*, 727 F.2d 884, 886 (9th Cir. 1984).  This is because "a decision that property is exempt could deplete the potential estate to such a degree that creditors would decline to participate further in the proceeding."  *Matter of Barker*, 768 F.2d at 194.  But "[o]n the other hand, a decision that the property is not exempt would cause title to such property to vest in the trustee during the pendency of the action with all the attendant consequences of vesting."  *Id.*

In this case, the amount of the exemption remains unknown: as the Bankruptcy Court noted, the record does not reveal with any specificity the amounts of money at issue.  But the same considerations animating *Barker* and related cases apply here.  A decision confirming that the exemption applies may cause the Trustee no longer to seek to sell the property through the bankruptcy process because he may decide that the secured creditors would not benefit.  A decision to the contrary would

green-light the Trustee's moving forward with the sale, with all attendant consequences.  Thus, jurisdiction over this appeal lies under 28 U.S.C. § 158(a)(1).[2]

### III.  Discussion

The bankruptcy court's conclusions of law are reviewed *de novo* and its findings of fact for clear error.  *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 90 (2d Cir. 2003).

As discussed, the Bankruptcy Court concluded that (1) under the circumstances known to it, the Trustee has the power to negotiate and effectuate the sale of the Property, and (2) the proceeds of that sale would not be subject to the homestead exemption.  On appeal, Stark challenges this conclusion on the same grounds as in her opposition to the Motion for Sale: that (1) carve-out deals are not permitted by the Bankruptcy Code, and (2) even they are, Stark is entitled to

---

[2] While this appeal has been pending, the Bankruptcy Court vacated the automatic stay with respect to the Property and allowed the Property's trustee to foreclose on it on behalf of the secured creditor.  R. at 191.  However, as of the date of this order, no foreclosure sale has taken place.  *See* Appellant's Letter Dated June 15, 2022 (noting that the foreclosure sale is scheduled for August 2, 2022), ECF No. 16.  Nor has Stark appealed the vacatur of the automatic stay, and the time to appeal has expired.  *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (grant of a motion for relief from the automatic stay is a final appealable order); Fed. R. Bankr. P. 8002(a)(1) (notice of appeal must be filed within 14 days of the Bankruptcy Court's order).

An order approving the sale of property of the estate is also a final order.  *See Gross v. Russo (In re Russo)*, 762 F.2d 239, 241 (2d Cir. 1985).  But the Bankruptcy Court did not approve or disapprove a sale in this case.  Rather, pending those details, the court explicitly reserved judgment on whether the sale ultimately would be allowed.  *See In re Stark*, 2020 WL 5778400, at *8.

her homestead proceeds before any creditors are paid.
Appellant's Br. 7-23, ECF No. 7.

      With respect to the first issue — whether carve-out
deals are permissible at all — courts generally have found such
arrangements permissible, though disfavored.  *See, e.g.*, *In re
KVN*, 541 B.R. at 7-8; *In re Bunn-Rodemann*, 491 B.R. at 133.
Stark contests this proposition on various grounds.  *See*
Appellant's Br. 7-16.  But it is not necessary to resolve this
question in the abstract, given Stark's position that she "does
not object to the sale" as long as she receives the homestead
exemption from the proceeds.  Appellant's Br. 19 n.9.[3]
Accordingly, I reach only the second question.  On that issue, I
hold that Stark would be entitled to her homestead exemption in
a carve-out deal, because the value of the carve-out is
ultimately derived from equity in the Property as defined by New
York law.  The Bankruptcy Court erred in determining otherwise.

      The filing of a bankruptcy petition creates the
bankruptcy estate, which generally includes "all legal or
equitable interests of the debtor in property as of the
commencement of the case."  11 U.S.C. § 541.  However, the

---

[3] At oral argument, Stark again acknowledged that there was "[n]o doubt"
that a carve-out deal is permissible if the carve-out is large enough to
cover the homestead exemption with money remaining for the unsecured
creditors.  Tr. of Oral Arg. 25:14-20.  At bottom, Stark objects not to the
carve-out deal *per se*, but rather to her being cut out of the proceeds of
that deal.  *Cf. In re Wilson*, 494 B.R. 502, 505 (Bankr. C.D. Cal. 2013)
(similar argument made by the debtor).

Bankruptcy Code exempts certain property from inclusion in the estate. *Id.* § 522. Under those rules, "an individual debtor may exempt from property of the estate" "any property that is exempt under . . . State or local law" in the state where the debtor has been domiciled for 730 days prior to filing the petition. *Id.* § 522(b)(1), (3)(A).

New York law provides an exemption for a New York debtor's home. Specifically, it exempts "[p]roperty" consisting of "a lot of land with a dwelling thereon" that is "owned and occupied as a principal residence" up to $170,825 "in value above liens and encumbrances." N.Y. C.P.L.R. § 5206(a); N.Y. Debt. & Cred. Law § 282.[4]

By exempting the "value" of the property "above liens and encumbrances," the New York exemption statute speaks to equity in the residence. As noted above, Stark had no equity in the home when she filed her petition, and she does not claim to have built any such equity since. Stark contends, rather, that *if and when* the Trustee negotiates a carve-out with the secured creditor, pursuant to which the creditor agrees to accept less than the total sale proceeds of the home, that agreement will

---

[4] The dollar amount of the exemption rises over time and varies according to the New York county in which the property is located. *See* N.Y. C.P.L.R. §§ 5206(a), 5253. At the time Stark filed her bankruptcy petition, the exemption for a homestead in Nassau County was $170,825. N.Y. State Dep't of Fin. Servs., Current Dollar Amount of Payments Statutorily Exempt from Enforcement of Judgments, https://www.dfs.ny.gov/industry_guidance/exemption_from_judgments.

create equity (in the amount of the agreed-upon reduction in the secured creditor's claim).  Appellant's Br. 17.  Stark contends that the first $170,825 of this equity belongs to her under the New York homestead exemption.  Appellant's Br. 19.

This case therefore turns on the question of whether the give-up that the Trustee negotiates is extracted from "value" in the "property" that is covered by the New York homestead exemption.  More specifically, is that consideration paid in exchange for the value of "a lot of land with a dwelling on it," "above liens and encumbrances"?  If not, where does it come from?  Said differently, what is the secured creditor actually paying for?

The Bankruptcy Court answered that the given-up funds are attributable not to such value, but rather to "an agreement essentially monetizing the Trustee's power under the [Bankruptcy] Code to dispose of the Property utilizing the section 363 process" to benefit the estate.  *In re Stark*, 2020 WL 5778400, at *7.  At least two other bankruptcy courts have reasoned similarly.  *See In re Bunn-Rodemann*, 491 B.R. at 136; *In re Diener*, 2014 WL 4086154, at *3.  Other courts have reached a contrary conclusion.  *See In re Christensen*, 561 B.R. at 211; *In re Wilson*, 494 B.R. 502, 506 (Bankr. C.D. Cal. 2013).

But the secured creditor does not "value" the "section 363 sale process" as an end in itself.  Rather, it values what

the process would allow the Trustee to deliver: the Property,
and the proceeds from the sale itself, sooner (and likely at
less expense) than they would arrive in a foreclosure
proceeding.  *See In re Christensen*, 561 B.R. at 205 (secured
creditor benefits from carve-out arrangement because it "has its
collateral liquidated without having to undertake the toil and
labor of foreclosure proceedings").

Thus the correct answer, in my view, is that in
exchange for the carve-out, the Trustee is delivering the sale
of the Property outside a foreclosure proceeding.  Said
differently, the Trustee is trading away, in exchange for the
carve-out, Stark's right to remain in the Property for an
extended period without making mortgage payments; her right to
exclude others during that period; and the like.

Having described the "value" at issue as such, it is
clear that the value resides in the homeowner's "property"
rights in the house, and is thus protected by the homestead
exemption.  Property rights in land are commonly described, in
our common law system, as a "'bundle of sticks' — a collection
of individual rights which, in certain combinations, constitute
property." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct.
1921, 1937–38 (2019).  And nestled among that bundle are the
rights, possessed by the debtor, that make the foreclosure
process such a headache for the secured creditor: the right to

14

continue to reside in the property and to exclude others (including the mortgage holder) from its enjoyment.  *E.g.*, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982) ("The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights.").

The Bankruptcy Court tacitly acknowledged this.  *In re Stark*, 2020 WL 5778400, at *5 ("[A] debtor's rights incidental to ownership of real property, including the right to negotiate with the mortgagee, also transfer to the estate upon a debtor's filing for bankruptcy."); *see also Owen v. Owen*, 500 U.S. 305, 308 (1991) (property of the estate includes "all of the interests in property, legal and equitable, possessed by the debtor at the time of filing").  When the Trustee trades away those rights via the section 363 sale process, he is trading away the same "property" referred to in the New York homestead exemption (or at least a part of that bundle).  *See In re Wilson*, 494 B.R. at 506 ("Funds derived from sales [resulting from a carve-out agreement] are property of the estate and are subject to valid exemptions.").

The Bankruptcy Court therefore ended the inquiry prematurely.  At the end of the day, the Trustee is monetizing part of the value of "a lot of land with a dwelling thereon"

that is "owned and occupied as a principal residence."  And that value is exempted by the New York homestead exemption statute.[5]

        Finally, the Trustee argues that no exception is warranted here because no exemption existed at the time of filing the exemption.  Answering Br. 17.  At least two courts have found this reasoning persuasive.  *See In re Diener*, 2015 WL 4086154, at *3 ("A debtor's exemptions reach property as of the petition date."); *In re Bunn-Rodemann*, 491 B.R. at 134 ("A debtor does not have the ability to claim exemptions which did not exist as of the commencement of the case . . . .").  These cases appear to have relied on *Owen v. Owen*, 500 U.S. 305 (1991).  But those cases misread *Owen*.

        *Owen* held that "under [11 U.S.C. § 522(b)], exempt property is determined 'on the date of the filing of the petition,' not when [a] lien [is] fixed."  500 U.S. at 314 n.6.  But *Owen* also says more than that.  The Court explained that when a property is overencumbered, the "debtor holds only bare

---

[5] At oral argument, I asked the parties whether the "order of operations" in the arrangement governing the sale of the Property matters — that is, whether the sale proceeds are first paid to the estate, which then pays the secured creditor, or vice versa.  In supplemental briefing, the parties answered that a departure from the normal procedures either makes no difference or is impermissible.  *See* Appellee Suppl. Letter 4, ECF No. 12; Appellant Suppl. Letter 4-5, ECF No. 13.  In the end, I conclude that there is no legally dispositive distinction between these two flavors of the transaction, even if both are permissible; the key is that the subtraction happens, not when or where it happens.  *See generally Va. Elec. & Power Co. v. Caldor, Inc.-N.Y.*, 117 F.3d 646, 650 (2d Cir. 1997) ("[I]n bankruptcy proceedings[,] substance should not give way to form . . . .").

legal title to his house," and therefore "only that legal
interest passes to the estate; the equitable interest remains
with the mortgage holder." *Id.* at 308.[6]  Thus, "since the
equitable interest does not pass to the estate, neither can it
pass to the debtor as an exempt interest in property." *Id.* at
308–09.  But in contrast, "[l]egal title will pass, and can be
the subject of an exemption," subject to the mortgage. *Id.* at
309.  Therefore, if the property value increases past the amount
of the lien, equity can be created and may become subject to any
applicable exemptions. *See, e.g.*, *In re Mannone*, 512 B.R. 148,
154 (Bankr. E.D.N.Y. 2014) ("[T]he proposed sale price
determines the extent to which the Debtor is entitled to receive
payment on account of a claimed exemption.  . . .  The Debtor's
homestead exemption exists, and any proceeds from the sale will

---

[6] In the bankruptcy context, "legal interest" refers to the "legal
title" — here, the name on the deed to the house. *See Owen*, 500 U.S. at 308.
But "debtors do not own an equitable interest in property that they hold in
trust for another, and thus, those trust funds are not 'property of the
estate.'" *Marrs-Winn Co. v. Giberson Elec. (In re Marrs-Winn Co.)*, 103 F.3d
584, 589 (5th Cir. 1996).  Here, although Stark has legal title to the house,
her ownership is subject to the mortgage, meaning that the value of the house
(up to the value of the mortgage) is held for the benefit of the secured
creditor, which therefore owns the "equitable interest." *Owen*, 500 U.S. at
308.

The nomenclature here may be misleading because under the common law of
property, in a "lien theory" state such as New York, "the granting of a
mortgage on real property creates a lien interest without divesting the
mortgagor of legal title during the period of debt repayment," and therefore
"the mortgagor retains both legal and equitable title." *Rivera Mercado v.
Banco Popular de Puerto Rico*, 599 B.R. 406, 420 (B.A.P. 1st Cir. 2019).  But
the Bankruptcy Code's distinction between legal and equitable interests are
not necessarily coextensive with the definitions of legal and equitable title
under state law.

first be applied towards the Debtor's homestead exemption."); *Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206, 1211 (9th Cir. 2010) ("[W]hat is frozen as of the date of filing the petition is the value of the debtor's exemption, not the fair market value of the property claimed as exempt. . . . [T]he estate is entitled to postpetition appreciation in the value of property a portion of which is otherwise exempt."). By their nature, carve-out arrangements do the same thing; the secured creditor's agreement to accept less money upon a sale creates equity in the home where none existed before.

### IV.  Conclusion

For these reasons, the decision of the Bankruptcy Court is reversed, and the case is remanded for further proceedings not inconsistent with this Memorandum & Order.

SO ORDERED.

_/s/ Eric Komitee_
ERIC KOMITEE
United States District Judge

Dated:     June 28, 2022
           Brooklyn, New York